# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

**Appeal No. 14-14530**
**(Middle District of Georgia, Case No. 7:12-CV-153-HL)**

_____

**LINDA JEAN QUIGG,**

**Plaintiff/Appellant**

**v.**

**THOMAS COUNTY SCHOOL DISTRICT, et al.,**

**Defendants/Appellees**
_____

**REPLY BRIEF OF APPELLANT**
_____

Harlan S. Miller
Miller Legal, P.C.
3646 Vineville Avenue
Macon, Ga., 31204
(404) 931-6490
(866) 704-3161 (fax)
hmiller@millerlegalpc.com

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF CONTENTS......................................................................i

TABLE OF CITATIONS.....................................................................ii

ARGUMENT AND CITATIONS OF AUTHORITY...........................1

    1.    Quigg Presented Evidence To The Trial Court
         Demonstrating That Gender Was A "Motivating
         Factor" In The Decision Not To Renew Her
         Contract Pursuant To 42 U.S.C. §2000e-2(m)....................1

    2     The Foregoing Evidence Sufficed To Impose
         Liability On TCSD Under 42 U.S.C. §2000e-2(m)............2

    3     The Trial Court Did Not Analyze Or Consider
         Quigg's Contention That Gender Was A
         "Motivating Factor" Underlying The
         Non-Renewal Decision.......................................................4

    4     Quigg Was Not Required To Present "Direct
         Evidence" In Order To Invoke 42 U.S.C.
         §2000e-2(m)'s "Motivating Factor"
         ("Mixed Motives") Analysis..............................................7

    5     Disputed Issues Of Facts Preclude Summary
         Judgment On The "Same Decision" Defense....................12

    6     Quigg's Opposition To Illegal
         Gender-Based Employment Decisions..............................14

    7     Attorney Farmer's Involvement In Making
         TCSD's Bogus Ethics Complaint To The PSC...............16

    8     Retaliation Claims----Causation........................................19

     9       TCSD Was  Plaintiff's "Employer"................................20

     10     TCSD's §1983 Liability Under *Monell*.........................23

CONCLUSION....................................................................................26

CERTIFICATE OF COMPLIANCE..................................................27

CERTIFICATE OF SERVICE............................................................28

## <u>TABLE OF CITATIONS</u>

**<u>Statutes</u>**                                                           **<u>Pages</u>**

42 U.S.C. §2000e-2(m)                                          *Passim*

42 U.S.C. §2000e-5(g)(2)                                       3

**<u>Cases</u>**

<u>Akouri v. State DOT</u>,                                          8

408 F3d 1338 (11th Cir.2005)

<u>APS v. Diamond</u>,                                               22

261 Ga.App. 641, 583 S.E.2d 500 (2003)

<u>Ash v. Tyson Foods</u>,                                          6

126 S.Ct. 1195, 1197 (2006)

<u>Beaver v. Rayonier, Inc.</u>,                                    3

200 F.3d 723, 730 (1999)

<u>Bell v. Birmingham Linen Serv Corp</u>,                          8

715 F.2d 1552, 1553, 1557 (11th Cir. 1983)

<u>Buckley v. Hospital Corp</u>,                                    8

758 F.2d 1525 (11th Cir. 1985)

<u>Brown v. City of Fort Lauderdale</u>,                           25

923 F.3d 1474 (11th Cir. 1991)

Brown v. MARTA,                                            8

261 Fed.Appx. 167 (11th Cir. 2008)

Burns v. Gadsden State Community College,                 5, 13

908 F.2d 1512, 1518, n.9 (11th Cir. 1990)

Caban Wheeler v. Elsea,                                   8

904 F.2d 1549, 1555 (11th Cir. 1990)

Calhoun v. EPS Corp,                                      8

36 F.Supp.3d 1344 (NDGA 2014)

Cook v. Colquitt County Bd. of Educ.                      22

261 Ga. 841, 412 S.E.2d 828 (1992)

Coffman v. Chugach Support Services,                      4

411 F.3d 1231, 1238  (11th Cir. 2005)

Craig v. Floyd County,                                    25

643 F.3d 1306, 1310 (11th Cir. 2011)

Crawford v. DolgenCorp,                                   8

790 F.Supp.2d 1361 (S.D. Alabama, 2011)

Desert Palace, Inc.  v Costa,                             8, 9

533 U.S. 90, 92, 123 S.Ct. 2148 (2003)

Diamond v. Colonial Life,                                    11

416 F.3d 310, 318 (4th Cir.2005)

Dickey v Dollar General,                                     8

351 Fed.Appx.389 (11th Cir. 2009)

Dixon v. The Hall Mark Companies,                            8

627 F.3d 849 (11th Cir. 2010)

EEOC v. Alton Packaging Corp,                                5, 8

901 F.2d 920, 924 n.6  (11th Cir. 1990)

EEOC v. Beverage Canners,                                    5, 8

897 F.2d 1067, 1071, n. 9 (11th Cir. 1990)

EEOC v. TVC Corporation,                                     7

532 Fed.Appx. 901, 902 (11th Cir. 2013)

Fann v. Johnson County Bd. of Educ.                          22

270 Ga.App. 186, 606 S.E.2d 110 (2004)

Fogg v. Gonzalez,                                            11

492 F.3d 497 (DC Cir. 2007)

Foser v. Time Warner Corp,                                   16

250 F.3d 1189 (8th Cir. 2001)

Foskey v. Vidalia City Schools,                                   22

258 Ga.App. 298, 575 S.E.2d 367 (2002)

Fye v Okl Corp Comm,                                             11

516 F.3d 1217 (10th Cir. 2008)

Gonzalez v. Lee County Housing Authority,                        15

161 F.3d 1290 (11th Cir. 1998)

Gordon v New York City BOE,                                      12

232 F.3d 111, 117 (2nd Cir. 2000)

Harris v. Shelby County Board of Education,                       4

99 F.3d 1078, 1084  (11th Cir. 1996)

Haynes v. W.C. Caye & Co,                                         8

52 F.3d 928, 930 (11th Cir. 1995)

Hearn v. City of Gainesville,                                    25

688 F.3d 1328, 1334  (11th Cir.  1983)

Holcomb v Iona College,                                          12

521 F.3d 139, 141-42 (2nd Cir. 2008)

Horne v. Turner Construction Company,                             8

136 Fed.Appx. 289 (11th Cir. 2005)

Ingram v. Strother,                                                    22

2009 WL 2143798 (M.D.Ga.,2009)

Jordan v Union City Georgia,                                    8

2015 WL 1472815 (NDGA)

Kasten v. St. Gobain Performance Plastics Corp,      15

131 S.Ct. 1325, 179 L.Ed.2d 379 (2011)

Lamonthe v Bal Harbour,                                         8

361 Fed.App. 844 (11th Cir. 2008)

Lee v. Russell County BOE,                                     8

684 F.2d 679 (11th Cir. 1982)

Lewis v. Smith, 731 F.2d 1535 (11th Cir. 1984)

Lindsey v American Cast Iron,                                 8

772 F.2d 799 (1985)

Manchinchik v. PB Power,                                      11

398 F.3d 345, 352 (5th Cir. 2005)

McGinest v. GTE,                                                   11

360 F.3d 1103 (9th Cir. 2004)

Mealing v. Ga. Dept. Of Juv. Justice,                     20

564 Fed.App. 421 (11th Cir. 2014)

Medlock v. Ortho Biotech, Inc.,                 11

164 F.3d 545, 553 (10th Cir.1999)

Merritt v. Dillard Paper Co,                    8

120 F.3d 1181, 1189 (11th Cir. 1997)

Monell v. Monell v. Dept. of Social Services,   24

436 U.S. 658, 690-91 (1978)

Moyo v. Gomez,                                  15

40 F.3d 982 (9th Cir.  1994)

Murphy v. City of Aventura,                     15

383 Fed.Appx. 915, 918  (11th Cir. 2010)

NLRB v. Talladega Cotton Factory,               16

213 F.2d 409 (5th Cir. 1954)

Owen v. City of Independence,                   25

445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 1398 (1980)

Ponce v Billington,                             11

679 F.3d 840 (DC Cir 2012);

Rachid v. Jack In the Box Inc,                  11

376 F3d 305 (5th Cir. 2004)

Rapold v. Baxter International,                    11

718 F.3d 1602 (7th Cir. 2013)

Reeves v. Wilbanks,                                22

542 Fed.Appx. 742 (11th Cir. 2013)

Roberts v. Rayonier,                               14

135 Fed.Appx. 351, 360  (11th Cir. 2005)

Rollins v. TechSouth,                              3

833 F.2d 1525, 1529, n.6 (11th Cir. 1987)

Rollins v. State of Fla. Dept. of Law Enf.,        15

868 F.2d 397, 400  (11th Cir. 1989)

Rowland v. American General,                       10

340 F3d 187 (4th Cir. 2003)

Ross v. Rhodes Furniture,                          3, 5

146 F.3d 1286, 1291 (11th Cir. 1998)

Schoenfeld v. Babbit,                              8

168 F.3d 1256, 1268  (11th Cir. 1999)

Senello v. Reserve Life Ins,                       8

872 F.2d 393, 394 (11th Cir. 1989)

Smith v. City of New Smyrna Beach,                    16, 19, 20

588 Fed. Appx. 965, 982 (11th Cir. 2014).

Smith v Xerox,                                        10

602 F.3d 320, 333 (5th Cir. 2010)

Spees v. James Marine,                                11

617 f3d 380, 390 (6th Cir.2010)

Stanley v. City of Dalton,                            13

219 F.3d 1280, 1294  (11th Cir. 2000)

Stegall v. Citadel Broadcasting,                      11

350 F.3d 1061 (9th Cir. 2003)

Straub v Proctor Hospital,                            4

131 S.Ct. 1186, 1190  (2011)

Takeda v Kragor Pharmeceutical,                       6

702 F.3d 1304, 1311  (11th Cir. 2012)

Tatroe v. Cobb County,                                14

2006 WL 559437 *13 (N.D. Ga.)

Thigpen v. Bibb County Sheriff's Department,    13

223 F.3d 1231, 1242, n.16 (11th Cir. 2000)

Trotter v. Board of Education    8

91 F.3d 1449 (11th Cir. 1996)

Tucker v. Talladega City Schools,    14

171 Fed.Appx.289, 299 (11th Cir. 2006)

Tureaud v. Grambling State University,    15

294 Fed.Appx. 909, 914 (5th Cir. 2008)

University of Texas v. Nassar,    10, 20

133 S.Ct. 2157 (2013)

Van Voorhis v. Hillsborough County,    8

512 F.3d 1296 (11th Cir. 2008)

Walters v. City of Atlanta,    8

803 F.2d 1135, 1141-42 (11th Cir. 1986)

White v Baxter HealthCare Corp,    10,11

533 F.3d 381, 400 (6th Cir. 2008)

Wright v. Southland Corp,                                          7, 10

187 F.3d 1287, 1306  (11th Cir. 1999)

Zachery v. Crawford County Bd. of Educ.,                          22

2008 WL 4394736  (M.D.Ga.,2008)

## ARGUMENT AND CITATIONS OF AUTHORITY

1.     **Quigg  Presented Evidence To The Trial Court Demonstrating That Gender  Was A "Motivating Factor"  In The Decision  Not To Renew Her Contract Pursuant To 42 U.S.C. §2000e-2(m)**

Wholly ignored in the briefs  of both TCSD and the individual Board Members,  Quigg identified to the trial court,   **[Doc 87-1, pp. 44-46],**   a  number of specific comments/actions on the part of the  individual Board Member Defendants  which "demonstrated"  that gender was a  "motivating factor"  underlying Quigg's non-renewal, to wit:

### Board Member Mark NeSmith:

(a)     immediately before the non-renewal, NeSmith told Scott Barrett that the reason he voted against Quigg's renewal was  because it was *"time to put a man in there."* **[Doc 63, pp. 29, 32, and 33] (Barrett Deposition, pp. 27, 30, 31); Doc 85,  ¶110);**

(b)     immediately before the non-renewal decision, Nesmith directed Quigg to devise a plan to hire a  "hatchet man", and suggested that the "hatchet man" be a male, Lee Bailey **[Doc 85, ¶¶68; 69; 80; Doc 85-2, p. 18];**

(c)     immediately before the non-renewal decision, while referencing an administrator position in the Middle School, NeSmith stated *"**I've been trying to get you to put a guy over there for years**"* **[Doc 85, ¶83;  Doc 85-6, p. 64];**

1

**Board Member Scott Morgan:**

(a)     immediately before the non-renewal decision, Morgan directed Quigg to devise a plan to hire a "hatchet man" [Doc 85, ¶73], which he suggested be filled by a **"guy"**; **[Doc 85, ¶74; 85; Doc 85-5, pp. 8-9]**;

(b)     immediately before the non-renewal decision, Morgan responded to Quigg's "plan" to fill the "hatchet man" position with two female curriculum specialists, by asking, *"We have no males?* **[Doc 85, ¶90; Doc 85-7, p. 67]**;

( c)    when Quigg asked Morgan why he voted not to renew her contract, Morgan stated, "Frankly, I didn't like your plan" **[Doc 85, ¶209-210]**

**Board Member Nancy Hiers:**

Soon after the non-renewal decision , Hiers stated that the reason she voted against Quigg's renewal was Quigg "needed a strong male working under her..." **[Doc 85, ¶173; Doc 85-10]**;

**Board Member Charles Evans**

Immediately before the non-renewal decision, Mr. Evans was likewise aware and was in agreement with the plan to require Quigg to hire an "Axe Man" ("now we are in the process of hiring an ax man to carry on for her")**[Doc 85, ¶200; Doc 60, p.226]**

**2      The Foregoing Evidence Sufficed To Impose Liability On TCSD Under 42 U.S.C. §2000e-2(m)**

In response to Defendants' motions for summary judgment, Quigg argued to the

2

trial court that the foregoing evidence "demonstrated" that gender was a "motivating

factor" underlying her non-renewal:

> Under Title VII, this evidence suffices to demonstrate that gender and/or retaliatory animus was a motivating factor in the non-renewal decision. 42 U.S.C. §2000e-2(m)("Except as otherwise provided in this sub chapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice...")[1]

**[Doc 87-1, p. 46]** (emphasis added). <u>See, **Quigg Principal Brief, pp. 56-61]**</u> Quigg

also argued that, even if the evidence noted above did not technically constitute "direct

evidence", it still constituted *circumstantial evidence* of discrimination. **[Doc 87-1,**

**pp. 49-50]** (citing, <u>Ross v. Rhodes Furniture</u>, 146 F.3d 1286, 1291 (11th Cir. 1998);

<u>Beaver v. Rayonier, Inc.</u>, 200 F.3d 723, 730 (1999); and <u>Rollins v. TechSouth</u>, 833

F.2d 1525, 1529, n.6 (11th Cir. 1987), an argument which she also raised in her

---

[1]The full text of 42 U.S.C. Sec. 2000e-2(m) is as follows: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, *even though other factors also motivated the practice.'"* 42 U.S.C. § 2000e-2(m) [42 USCS § 2000e-2(m)]." Nonetheless, the defendant can limit its liability by proving that it would have made the same employment decision had even without considering the improper factor. 42 U.S.C. §2000e5(g)(2)(B).

principal brief before this Court. [Appellant's Brief, pp. , 27, 55-56]

"Under [42 U.S.C. §2000e-2(m)] the Plaintiff in a Title VII action prevails wherever he or she proves that one of the delineated factors was a *motivating factor* behind a particular employment decision...". Harris v. Shelby County Board of Education, 99 F.3d 1078, 1084 (11th Cir. 1996). Gender is a "motivating factor" in a given decision if the employer "relied on, took into account, considered, or conditioned it's decision on that basis." Coffman v. Chugach Support Services, 411 F.3d 1231, 1238 (11th Cir. 2005)(construing "motivating factor" as used in the Uniform Services Employment and Reemployment Act ("USERRA"); Straub v Proctor Hospital, 131 S.Ct. 1186, 1190 (2011)(URESSA "is very similar to Title VII, which prohibits employment discrimination...and states that such discrimination is prohibited when [gender] was a motivating factor...") "A motivating factor does not mean that it had to be the sole cause of the employment action. Instead, it is *one of the factors that a truthful employer would list if asked for the reasons for its decision."* Coffman, 411 F.3d at 1238. Defendants' failure to address the "motivating factor" issue is understandable because any illumination of the subject would serve only to highlight why the case must be returned to the trial court and ultimately submitted to the jury.

4

**3      The Trial Court Did Not Analyze Or Consider Quigg's Contention**

**That Gender Was A "Motivating Factor" Underlying The**

**Non-Renewal Decision.**

Regrettably, the trial court, rather than addressing the "motivating factor" issue

raised by Quigg, instead ignored the issue altogether by finding that Quigg's evidence

did not amount to "direct evidence". Referring to the evidence regarding NeSmith ("Its

time to get a man in there), the Court stated:

> This statement, despite its superficial appearance, is not
> direct evidence of gender discrimination because it was not
> made concurrently with the non-renewal...[2]

---

[2]The trial court's impermissible "gloss" on Quigg's evidence plainly violated well established summary judgment procedure. See, Rollins v. Techsouth, 833 F.2d 1525, 1532 (11th Cir. 1987)("[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). In evaluating the *quality* of appellant's evidence on age discrimination, the district court crossed that line. Therefore, the grant of summary judgment must be reversed." In any event, as to the "direct evidence" issue, "concurrentness" is not a requirement. See, also, EEOC v. Beverage Canners, 897 F.2d 1067, 1071, n. 9 (11th Cir. 1990)("Discriminatory motive may be proved by direct evidence of the hiring authority's...discriminatory attitudes, *regardless of whether it relates to the employment decision at issue.")* (emphasis added). ***Leopards do not change their spots.*** See Burns v. Gadsden State Community College, 908 F.2d 1512, 1518, n.9 (11th Cir. 1990)("the statement at issue in this case was directly related to the employer's hiring decisions involving the kind of position for which the plaintiff applied...this court has held that direct evidence of the decision maker's discriminatory motive regarding one employment decision may be used as evidence of that decision maker's discriminatory motive in making a similar decision"); EEOC v. Alton Packaging Corp, 901 F.2d 920, 924 n.6 (11th

> NeSmith's statement is direct evidence that he was improperly considering gender several weeks prior to the vote, but a factfinder would have to infer that *gender was **the*** *factor that ultimately persuaded him to vote against Plaintiff.* (emphasis added) [Doc 100, pp. 26-27][3]

As already addressed in Quigg's principal brief, the trial court's decision to discount/minimize Quigg's evidence and to interpret NeSmith's statements in the most benign manner possible itself constitutes reversible error. <u>Takeda v Kragor Pharmeceutical</u>, 702 F.3d 1304, 1311 (11th Cir. 2012)("The district court's characterization of [the decision maker's] comments is a reasonable one, but it is not the only permissible construction of the remarks...At the Rule 56 stage, where reasonable inferences are to be drawn in favor of the party opposing summary judgment, the district court should not have placed a gloss on the remarks in favor of the [movant].")[4]

---

Cir. 1990)("The statements indicate a decidedly negative attitude toward black people...there is no reason to think those attitudes differ from hiring to promotions.")

[3]The trial court's suggestion that for Quigg to prevail, the factfinder would be required to find that gender was "***the*** factor" upon which NeSmith relied is simply an incorrect statement of the law. Pursuant to 42 U.S.C. §2000e-2(m), the plaintiff prevails when she demonstrates that gender was one of the reasons relied on, *even if other reasons were also relied on.*

[4]<u>See</u> <u>also</u>, <u>Ash v. Tyson Foods</u>, 126 S.Ct. 1195, 1197 (2006)("The Court of Appeals [held] that while use of 'boy' when modified by a racial classification such

6

In any event, the trial court failed to consider whether Quigg's evidence sufficed, as circumstantial evidence, to demonstrate that her gender was a "motivating factor" underlying the non-renewal decision. This failure constitutes legal error. See, EEOC v. TVC Corporation, 532 Fed.Appx. 901, 902 (11th Cir. 2013)("The District Court erred by refusing to consider the argument...that Carroll's acted with mixed motives.")

**4      Quigg Was Not Required To Present "Direct Evidence" In Order To Invoke 42 U.S.C. §2000e-2(m)'s "Motivating Factor" ("Mixed Motives") Analysis.**

Defendants imply that in order to get to the jury on the "motivating factor" ("mixed motives") analysis, Quigg was required to present "direct evidence" of gender animus on the part of at least four of the five defendant board members. See, [TCSD Brief, p. 18] (stating that Quigg "failed to present 'direct evidence' as to all of the board members' discriminatory animus in voting against her non-renewal as

---

as 'black' or 'white' is evidence of discriminatory intent, the use of 'boy' alone is not evidence of discrimination.' Although it is true that use of the disputed word will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign."

superintendent)[5]

Quigg, however, was not required to present "direct evidence" in order to invoke §2000e-2(m). <u>Desert Palace, Inc.  v Costa</u>, 533 U.S. 90, 92, 123 S.Ct. 2148 (2003) ("The question before us is whether a plaintiff must present direct evidence of discrimination in order to receive a mixed-motive instruction under Title VII of the

---

[5]Fairly considered at the summary judgment stage, Quigg's evidence as to NeSmith clearly amounts to "direct evidence" under this Court's precedent.   <u>See</u>, <u>Wright v. Southland Corp</u>, 187 F.3d 1287, 1306  (11th Cir. 1999)(proper definition of "direct evidence"  is "evidence from which the trier of fact could conclude, more likely than not, that the defendant discriminated against the plaintiff in the contested employment decision on the basis of a protected personal characteristic"). Numerous cases confirm and apply this standard. <u>See</u>,    <u>Lee v. Russell County BOE</u>, 684 F.2d 679 (11th Cir. 1982), <u>Bell v. Birmingham Linen Serv Corp</u>, 715 F.2d 1552, 1553, 1557 (11th Cir. 1983); <u>Lewis v. Smith</u>, 731 F.2d 1535 (11th Cir. 1984); <u>Buckley v. Hospital Corp</u>, 758 F.2d 1525 (11th Cir. 1985); <u>Lindsey v. American Cast Iron</u>, 772 F.2d 799 (1985); <u>Walters v. City of Atlanta</u>, 803 F.2d 1135, 1141-42 (11th Cir. 1986); <u>Senello v. Reserve Life Ins</u>, 872 F.2d 393, 394 (11th Cir. 1989); <u>EEOC v. Beverage Canners</u>, 897 F.2d 1067, 1068, n. 3 (11th Cir. 1990); <u>EEOC v. Alton Packaging Group</u>, 901 F.2d 920, 923 (11th Cir. 1990); <u>Caban Wheeler v. Elsea</u>, 904 F.2d 1549, 1555 (11th Cir. 1990); <u>Haynes v. W.C. Caye & Co</u>, 52 F.3d 928, 930 (11th Cir. 1995); <u>Merritt v. Dillard Paper Co</u>, 120 F.3d 1181, 1189 (11th Cir. 1997); <u>Schoenfeld v. Babbit</u>, 168 F.3d 1256, 1268  (11th Cir. 1999); <u>Akouri v. State DOT</u>, 408 F3d 1338 (11th Cir.2005); <u>Horne v. Turner Construction Company</u>, 136 Fed.Appx. 289 (11th Cir. 2005); <u>Van Voorhis v. Hillsborough County</u>, 512 F.3d 1296 (11th Cir. 2008); <u>Brown v. MARTA</u>, 261 Fed.Appx. 167 (11th Cir. 2008); <u>Lamonthe v Bal Harbour</u>, 361 Fed.App. 844 (11th Cir. 2008); <u>Dickey v Dollar General</u>, 351 Fed.Appx.389 (11th Cir. 2009); <u>Dixon v. The Hall Mark Companies</u>, 627 F.3d 849 (11th Cir. 2010); <u>Crawford v. DolgenCorp</u>, 790 F.Supp.2d 1361 (S.D. Alabama, 2011); <u>Calhoun v. EPS Corp</u>, 36 F.Supp.3d 1344 (NDGA 2014); <u>Jordan v Union City Georgia</u>, 2015 WL 1472815 (NDGA)

Civil Rights Act of 1964....We hold that direct evidence is not required."),

disapproving, <u>Trotter v. Board of Trustees</u>, 91 F.3d 1449, 1453-54 (11th Cir.

1996)(requiring "direct evidence" a predicate to "motivating factor" analysis)

In <u>Desert Palace</u>, the Supreme Court approved the trial court's jury instruction

regarding motivating factor analysis, to wit:

> the plaintiff has the burden of proving...by a preponderance
> of the evidence that she suffered adverse work conditions
> and that her sex was a motivating factor in any such work
> conditions imposed upon her.

> You have heard evidence that the defendant's treatment of
> the plaintiff was motivated by the plaintiff's sex and also by
> other lawful reasons. If you find that plaintiff's sex was a
> motivating factor in the defendant's treatment of the
> plaintiff, the plaintiff is entitled to your verdict, even though
> you find that the defendant's conduct was also motivated by
> a lawful reason.

> However, if you find that the Plaintiff's treatment was
> motivated by both gender and lawful reasons, you must
> decide whether the plaintiff is entitled to receive damages.
> The plaintiff is entitled to damages unless the defendant
> proves by a preponderance of the evidence that the
> defendant would have treated plaintiff similarly even if the
> plaintiff's gender played no role in the employment
> decision.

123 S.Ct. at 2152-53. No "direct evidence" was submitted in <u>Costa</u>. The Supreme

Court's holding is crystal clear: so-called "direct evidence" is not required; to the

contrary, "circumstantial" evidence, including the familiar burden shifting McDonnell Douglas (prima facie case/pretext) mode of analysis, and/or evidence from which the trier of fact "could conclude, more likely than not, that the defendant discriminated against the plaintiff in the contested employment decision on the basis of a protected personal characteristic", Wright v. Southland, supra, is sufficient to invoke §2000e-2(m)

Numerous appellate courts have acknowledged Costa's explicit holding that "direct evidence" is not required in order to invoke §2000e-2(m), that to the contrary, "circumstantial evidence" is sufficient, and that it is the duty of the trial court to determine whether the evidence presents a case of "mixed motives". See, Rowland v. American General, 340 F3d 187 (4th Cir. 2003)(trial court erred in failing to give motivating factor/mixed motive charge); Smith v Xerox, 602 F.3d 320, 333 (5th Cir. 2010)("if the district court has before it substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action, the court may give a mixed motive instruction"), overruled on other grounds, University of Texas v. Nassar, 133 S.Ct. 2157 (2013), White v Baxter HealthCare Corp, 533 F.3d 381, 400 (6th Cir. 2008)("the McDonnell-Douglas burden-shifting framework does not apply to a summary judgment analysis of Title VII mixed motives claims...to survive a defendant's motion

10

for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only

produce evidence sufficient to convince a jury that...sex was a motivating factor...."); 

Manchinchik v. PB Power, 398 F.3d 345, 352 (5th Cir. 2005)(same); Rachid v. Jack

In the Box Inc, 376 F3d 305 (5th Cir. 2004)(same); Diamond v. Colonial Life, 416

F.3d 310, 318 (4th Cir.2005)(same);  McGinest v. GTE, 360 F.3d 1103 (9th Cir. 2004)

(same); Fogg v. Gonzalez, 492 F.3d 497 (DC Cir. 2007) (same); Fye v Okl Corp

Comm, 516 F.3d 1217 (10th Cir. 2008) (same);  Medlock v. Ortho Biotech, Inc., 164

F.3d 545, 553 (10th Cir.1999); Stegall v. Citadel Broadcasting, 350 F.3d 1061 (9th Cir.

2003) (same); Rapold v. Baxter International, 718 F.3d 1602 (7th Cir. 2013); Ponce v

Billington, 679 F.3d 840 (DC Cir 2012); Spees v. James Marine, 617 f3d 380, 390 (6th

Cir.2010)

The necessary corollary is that,  contrary to the trial court's analysis (and

unaddressed in Appellees' briefs), Quigg was  not required to prove "pretext" in order

to establish liability  under 42 U.S.C. §2000e-2(m). White v Baxter HealthCare Corp,

533 F.3d 381, 401  (6th Cir. 2008)   ("In order to reach a jury, the plaintiff is not

required to eliminate or rebut all the possible legitimate motivations of the defendant

as long as the plaintiff can demonstrate that an illegitimate discriminatory animus

factored into the defendant's decision to take the adverse employment action...The only

question that a court need ask in determining whether the plaintiff is entitled to submit

11

his claim to a jury in such cases is whether the plaintiff has presented "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for' " the defendant's adverse employment decision..."); Holcomb v Iona College, 521 F.3d 130, 141-42 (2nd Cir. 2008)("A plaintiff alleging that an employment decision was motivated by legitimate and illegitimate reasons may establish that the impermissible reason was a motivating factor without proving that the employer's proffered explanation was not some part of the employer's motivation"). See also, Gordon v New York City BOE, 232 F.3d 111, 117 (2nd Cir. 2000)("It is...now well settled that a plaintiff in a Title VII action need not disprove a defendant's proffered rationale for its adverse actions in order to prevail.")

**5      Disputed Issues Of Facts Preclude Summary**

**Judgment  On The "Same Decision" Defense.**

Defendants argue that they are entitled to summary judgment on the issue of the "same decision" partial  affirmative defense (to damages only).   In this regards, they state  that "even if the votes of Nancy Hiers, Mark NeSmith, and Scott Morgan are deemed to be tainted,  there still would have been a 2-2 tie on the motion to renew Dr. Quigg's contract, and the motion would have failed."  [Board Member Brief, pp. 61-62] This is simply incorrect.

12

Clearly, the votes of NeSmith, Morgan, and Hiers are "tainted"—based on their discriminatory comments **and** Quigg's prima facie case/evidence of pretext . **[Doc 85, ¶¶102-110; [Doc 66, pp. 193-196] ]** (refutation of NeSmith "reasons"); **[Doc. 85, ¶¶49, 111-121]** (refutation of Morgan "reasons"); **[Doc. 85, ¶¶163-173]** (refutation of Hiers "reasons"). The same is true with regards to Evans and Streets: who also agreed with the notion of forcing Quigg to hire a strong male "axe man." **[Doc 64, pp. 24-25] (Morgan Dep. Pp. 23-24); [Doc 64-2, p. 23](Morgan Dep. Pp. 140).** Even if this evidence was considered insufficient standing alone to "taint" the votes of Evans and Streets, Quigg has created a jury issue as to both of their votes by way of making out a prima facie case, and sufficiently discrediting their respective laundry lists of post hoc justifications for voting not to renew Quigg. **[Doc 85, ¶¶122-163]** (refutation of Streets "reasons"); **Doc 85 ¶¶174-200** (refutation of Evans "reasons") On these facts, Defendants' are not entitled to summary judgment on the "same decision" partial affirmative defense.[6]

---

[6]The same decision defense is essentially a credibility issue and is frequently rejected at the summary judgment stage. See, Burns v. Gadsden State, 908 F.2d 1512, 1519 (11th Cir. 1990) ("At the summary judgment stage, the employer can prevail on this issue only if the record evidence that its employment decision was not based on discrimination is so strong that a reasonable trier of fact **must** so conclude..."); See also Stanley v. City of Dalton, 219 F.3d 1280, 1294 (11th Cir. 2000)("while [the employer] has presented sufficient evidence to create a jury issue on the (the same decision defense), his evidence is not strong enough to warrant judgment as a matter of law. While the [proffered reason] alone was an adequate

**6.     Quigg's Opposition To Illegal**

**Gender-Based Employment Practices**

Quigg claims that in addition to her personal gender, her contract was not renewed in retaliation for having opposed unlawful gender-based employment practices, i.e, limiting the universe of candidates to fill the Assistant Superintendent (i.e, strong male hatchet man)   to *men*. **[Doc 28, ¶¶28, 30, 32-33, 55; Doc 85, ¶¶65-85;   Doc 85-2, 85-3, 85-4, 85-5, 85-6, 85-7]**   The decision not to renew Quigg's contract occurred just days after Quigg's initial refusal to engage in such unlawful gender based decision making, and just minutes after Quigg formally unveiled her lawful plan to the entire Board in an executive session immediately preceding the non-renewal vote. **[Doc 85, ¶¶ 65, 100-101, 209;   Doc 64-1, pp. 59-60]**

With regards to Board Member Heirs, Quigg has presented "direct evidence" of retaliatory motive. **[Doc 85, ¶175; Doc 85-10]** Likewise, Board Member Morgan, in explaining his rationale for voting not to renew Quigg, stated, "Frankly, I didn't like

---

lawful basis to terminate Stanley, we cannot say as a matter of law that [the employer] **necessarily would have done so** absent [consideration of the unlawful criterion.");  Thigpen v. Bibb County Sheriff's Department, 223 F.3d 1231, 1242, n.16  (11th Cir. 2000)(denying summary judgment to employer on  same decision defense); Tucker v. Talladega City Schools, 171 Fed.Appx.289, 299 (11th Cir. 2006)(affirming denial of employer's summary judgment motion based on same decision defense"); Roberts v. Rayonier, 135 Fed.Appx. 351, 360  (11th Cir. 2005)(same) Tatroe v. Cobb County, 2006 WL 559437 *13 (N.D. Ga.)

14

your plan" —that is, he didn't like Quigg's "plan" to ignore the "strong hatchet man"

edict. **[Doc 85, ¶173]**

TCSD argues that Quigg's refusal to make gender-based employment decisions

does not constitute "sufficiently oppositional activity." [TCSD Brief, p. 18, n.12] This

assertion finds no support in the record. It is undisputed in this case that Quigg was

essentially ordered to hire a "strong male hatchet man." She refused, stating, "I am

uncomfortable with something like that." **[Doc 85-6, p. 64]** Clearly, this expression of

opposition combined with Quigg's ultimate refusal to engaged in the demanded

gender-based decision making constitutes sufficient "oppositional" activity.[7]  <u>See</u>,

<u>Gonzalez v. Lee County Housing Authority</u>, 161 F.3d 1290 (11th Cir. 1998)(refusing

to engage in discrimination prohibited under Fair Housing Act is protected activity);

<u>Tureaud v. Grambling State University</u>, 294 Fed.Appx. 909, 914 (5th Cir. 2008)

(refusal to engage in race-based employment decision making is protected activity);

<u>Moyo v. Gomez</u>, 40 F.3d 982 (9th Cir. 1994)(prison guard who refused to discriminate

against black prisoners engaged in protected activity) ("Under the terms of Sec. 704(a),

---

[7]<u>See</u>, <u>Kasten v. St. Gobain Performance Plastics Corp</u>, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011) (oral opposition to unlawful employment practice sufficient to be protected under the FLSA); <u>Rollins v. State of Fla. Dept. of Law Enf.</u>, 868 F.2d 397, 400 (11th Cir. 1989)(informal communication of opposition to unlawful practice is protected); <u>Murphy v. City of Aventura</u>, 383 Fed.Appx. 915, 918 (11th Cir. 2010)(conduct protected if it implicitly communicates a belief that the practice is unlawful)

requiring an employee to discriminate is itself an unlawful employment practice. If Moyo can demonstrate that he was discharged for refusing to implement a policy that discriminates against blacks, he has stated a claim under that section."); Foser v. Time Warner Corp, 250 F.3d 1189 (8th Cir. 2001)("An employee engages in protected activity when she opposes an action 'based on a reasonable belief that [her] employer has engaged in discriminatory conduct,...and it can include refusal to implement a discriminatory policy"); NLRB v. Talladega Cotton Factory, 213 F.2d 409 (5th Cir. 1954)(supervisor may be ordered reinstated where fired for refusing to discriminate against union adherents)

Quigg's "strong male hatchet man" retaliation claim is supported by a prima facie case (protected conduct; adverse action temporal proximity) and evidence of pretext. **[Doc 85, ¶¶102-200]** See,   Smith v. City of New Smyna Beach, 588 Fed. Appx. 965, 982 (11th Cir. 2014).

### 7.    Attorney Farmer's Involvement In Making
### TCSD's  Bogus Ethics Complaint To The  PSC
### In Retaliation For Quigg's Filing EEOC Charge

Quigg also claims that after she filed EEOC charges against TCSD and participated in proceedings before that agency, TCSD (acting through Quigg's strong male hatchet man replacement, Dusty Kornegay, and TCSD's attorney in this appeal,

16

Randall Farmer), retaliated against her by initiating a bogus and contrived "ethics

complaint. TCSD has admitted that its Counsel in this appeal, Mr. Farmer, personally

participated in the decision to initiate the bogus and contrived PSC investigation

concerning Quigg. Specifically, in response to the following Interrogatory,

> Please identify by name and position all persons who
> participated in the decision of the Thomas County School
> District to initiate an ethics complaint to the PSC regarding
> the Plaintiff.

[Doc 85-15, p.9] On July 30, 2013 (long after the filing of the Complaint and the

Amended Complaint), TCSD responded as follows:

> ...Defendant responds as follows:....Randall Farmer, attorney....

[Doc 85-15, p. 10]

Notwithstanding TCSD's own disclosure of Farmer's involvement in the

decision to initiate the ethics complaint (on July 30, 2013), it remarkably seeks to

fault *Quigg* for not identifying Farmer's role in either the initial Complaint or the First

Amended Complaint. [TCSD Brief, p. 25, n.18] The problem with this "reasoning"

is that Quigg's initial Complaint was filed on November 8, 2012, and the First

Amended Complaint was filed on February 22, 2013, [Doc 1, Doc 28], well before

TCSD belatedly disclosed Farmer's direct participation in TCSD's decision to make

the ethics complaint on July 30, 2013. What precisely, does TCSD contend that

Quigg should have done after the belated disclosure? Re-disclose?

Farmer's involvement in the decision to file the Ethics Complaint is key to a proper understanding of the circumstances presented in this case. On August 7, 2011, the EEOC sent TCSD notice of Quigg's charge of gender discrimination. [Doc 80-17]. On September 16, 2011, Attorney Farmer submitted TCSD's position statement to the EEOC, [Doc 80-23], which notably fails to reference even a fraction of the alleged "reasons" now dreamed up by the individual defendants to justify the non-renewal decision. Thereafter, on February 6, 2012, Quigg's male replacement, Kornegay, initiated TCSD's communications with the PSC regarding Quigg's alleged unethical conduct. [Doc 80-18]

In a subsequent letter dated , Kornegay advised the PSC as follows:

> When Quigg was preparing to vacate her office, she directed the system technology director to back-up all of the files on her computer to flash-drives and then to delete the computer hard drive. ***Quigg subsequently filed an EEOC complaint against the school district. As part of the discovery process in preparation to defend the system, attorney's representing the school district issued a demand letter to Quigg....***

[Doc 85-13, p.6] Thereafter, on March 18-19, 2012, TCSD sent a letter to PSC "sanitized" by its attorneys---deleting the reference to Quigg's "EEOC Complaint". [Doc 85-14; 80-15]

18

TCSD argues that its  delay in initiating the ethics charges against Quigg is somehow "too long" to support an inference of retaliatory intent. [TCSD Brief, p. 36] There is no evidence to support this contention.  At no point in Defendants' briefs  do they state when, between the date they received notice of the filing of Quigg's EEOC charge (August of 2011)  and when, during Farmer's EEOC "defense"  prior to making their initial allegations against Quigg  to the PSC, they elected to proceed against Quigg in that fashion. In other words, if in their view, they lacked sufficient evidence to make the allegations against Quigg until February of 2012, then they acted immediately to carry out their agenda of retaliation.

Equally important, Defendants'  assertion begs the issue: quite clearly, but for Quigg's EEOC charge, Farmer would not have been "prepar[ing] to defend the system....".  His "preparations to defend the system" against Quigg's EEOC charge, coupled with his admitted participation in the decision to initiate the ethics complaint, more than suffices to demonstrate a "causal connection" between the EEOC charge and the PSC Complaint.

Quigg's EEOC charge retaliation claims  is supported by a prima facie case (protected conduct; adverse action temporal proximity) and evidence of pretext. **[Doc 85, ¶¶102-200]** See,   Smith v. City of New Smyna Beach, 588 Fed. Appx. 965, 982 (11th Cir. 2014).

19

**8        Title VII Retaliation Claims—Causation**

TCSD argues that Quigg cannot satisfy the "but for" standard of causation applicable to Title VII retaliation claims. [TCSD Brief, p. 33]    TCSD is simply mistaken.

In University of Texas Southwestern Medical Center v Nassar, supra, the Court held that Title VII's "motivating factor" analysis applicable to *discrimination* claims does not apply to *retaliation* claims. In other words, a retaliation plaintiff is never entitled to a jury charge effectively transferring the burden of persuasion to the defendant employer. In short, in order to prevail, retaliation Plaintiffs must prove more than that retaliation was one of the factors considered by the employer, i.e., was merely a "motivating factor."   Invoking the mantra "but for causation", however, is not sufficient to bar all retaliation claims reaching a jury.

In the wake of Nassar, this Court has continued to apply the McDonnell Douglas burden shifting method of analysis to Title VII retaliation claims (prima facie case, plus evidence of pretext. Smith v. City of New Smyrna Beach, supra.  See also, Mealing v. Ga. Dept. Of Juv. Justice, 564 Fed.App. 421 (11th Cir. 2014). The plaintiff is entitled to prevail if she adduces evidence to satisfy these elements, which Quigg has plainly done here.

**9        TCSD Was Quigg's  "Employer"**

20

TCSD argues that the County Board of Education—not TCSD—was Plaintiff's "employer", implying that Quigg has sued the wrong party. [TCSD Brief, pp. 14-17] These contentions are preposterous both on the facts and the law.

On July 1, 2007, Quigg and TCSD entered into a "Contract of Employment" which expressly recited that TCSD was Quigg's employer. [Doc 67-2, pp. 3-9]. The document was signed on behalf of TCSD by the Chairman of the Board of Education. Id. A year later, on July 1, 2008, the parties entered into another such contract, with the same stipulations. [DOC 67-2, pp. 10-16]

In light of these facts,  TCSD has previously admitted that *it* is Plaintiff's employer. Paragraph 11 of the Amended Complaint [DOC 19-1] alleges the following facts:

> The Superintendent is appointed by the Board of Education and is employed by the School District.

TCSD's Answer to Paragraph 11 was as follows:

> Defendant admits the allegations of Paragraph 11 of Plaintiff's First Amended Complaint to the extent the superintendent is hired by the school board  and is an employee of the School District. [Doc 36, p.7, ¶11]

Similarly, Paragraph 12 of the Amended Complaint [Doc 19-1] alleges the following facts:

21

> Dr. Quigg was appointed superintendent by the Board of
> Education and was employed by the School District on June
> 1, 2007.

TCSD's Answer to Paragraph 12 was as follows:

> Defendant admits the allegations contained in Paragraph 12
> of Plaintiff's First Amended Complaint to the extent that the
> Plaintiff was hired by the members of the board of
> education as Superintendent for the Thomas County School
> District on June 1, 2007. [Doc 36, p.7, ¶12]

After Quigg filed her Charge of Discrimination with the U.S. Equal
Employment Opportunity Commission ("EEOC"), TCSD—not the Board of
Education—responded as Plaintiff's "employer". **[Doc 80-23]** No contention was
raised that TCSD was not Quigg's employer.   Based on these facts and  judicial
admissions, TCSD is plainly not free to now argue that it was  not Quigg's  employer.

TCSD's underlying legal contention—that the *Board of Education* (and not it)
is a separate "legal entity" and  was Plaintiff's Title VII "employer" (and its  implicit
contention that  Quigg should have sued the Board of Education  instead of it)  is
legally devoid of merit.  For example, in Cook v. Colquitt County Bd. of Educ. 261 Ga.
841, 412 S.E.2d 828 (1992), the trial court dismissed a suit brought against the
Colquitt County Board of Education on the ground that it is not a legal entity subject
to suit.  The Supreme Court of Georgia affirmed,  observing  as follows:

> In a long line of cases, we, and the Court of Appeals, have

22

> held that a county board of education, unlike the school
> district which it manages, is not a body corporate and does
> not have the capacity to sue or be sued. See, e.g., Smith v.
> Maynard, 214 Ga. 764, 769(2), 107 S.E.2d 815 (1959);
> Parker v. Bd. of Ed. of Sumter County, 209 Ga. 5(2), 70
> S.E.2d 369 (1952); Foster v. Cobb County Bd. of Ed., 133
> Ga.App. 768, 213 S.E.2d 38 (1975).

261 Ga. at 841. See also, Fann v. Johnson County Bd. of Educ. 270 Ga.App. 186,

606 S.E.2d 110 (2004)("a county board of education, unlike the school district which

it manages, is not a body corporate and does not have the capacity to sue or be sued.");

Foskey v. Vidalia City Schools, 258 Ga.App. 298, 575 S.E.2d 367 (2002)(same); APS

v. Diamond, 261 Ga.App. 641, 583 S.E.2d 500 (2003)(same); Zachery v. Crawford

County Bd. of Educ., 2008 WL 4394736 (M.D.Ga.,2008) (Lawson, J) (holding that

Crawford County School District was the proper defendant in Title VII discrimination

case); Ingram v. Strother, 2009 WL 2143798 (M.D.Ga.,2009)(Lawson, J)("Based

on Cook, it was abundantly clear when Plaintiff filed suit against the Hancock County

School Board that it was not an entity capable of being sued."); Reeves v. Wilbanks,

542 Fed.Appx. 742 (11th Cir. 2013)(citing Cook for the proposition that "county school

boards lack the capacity to sue or be sued under Georgia law."). TCSD's "employer"

contention should be deemed waived, but if considered, should be rejected as patently

devoid of merit.

23

**10    TCSD's §1983 Liability Under *Monell***

As noted above, acting on behalf of TCSD, the Board of Education, a seven member body, is authorized to select TCSD's School Superintendent.  Quigg alleged below that the votes not to renew her contract were tainted by unlawful gender animus of the five individual Board Member Defendants (NeSmith, Morgan, Hiers, Streets, and Evans). [Doc 28, p. 8, ¶33] ("The individual Defendants acted in concert to cause the School District to discharge Dr. Quigg as Superintendent because of Dr. Quigg's gender....").

To support this claim, Quigg offered direct evidence of gender bias based on overtly discriminatory statements made by Defendants Morgan, NeSmith and Heirs. [Doc 87-1, pp. 48-52; Doc 85, pp. 22-32 (¶¶65-99)].  She also demonstrated a prima facie case of gender discrimination [Doc 100, p. 28],  and as to each individual Board Member Defendant,    presented evidence that the legitimate, non-discriminatory reasons advanced by them  were "unworthy of credence"----such as to support a finding of pretext, and ultimately, discrimination. [Doc. 85, pp. 33-36 (¶¶102-110) (NeSmith)]; [Doc. 85, pp. 36-42 (¶¶111-121)(Morgan]; [Doc. 85, pp. 42-55 (¶¶122-162)(Streets)]; [Doc. 85, pp. 55-59  (¶¶163-173) (Hiers)]; [Doc. 85, pp. 59-70 (¶¶174-200)(Evans)].

TCSD incorrectly  argues that Plaintiff has not adequately addressed the

24

question of its §1983 liability under <u>Monell v. Monell v. Dept. of Social Services</u>, 436 U.S. 658, 690-91 (1978). [TCSD Brief, pp. 11-14]    This contention is simply misguided  First, the trial court did not reach the <u>Monell</u> issue, finding instead a lack of evidence of discriminatory intent. [Doc 100, pp. 24]("Defendants raise a number of arguments for why summary judgment is appropriate, but the Court need not address each of those arguments because Plaintiff has failed to establish her substantive claims.") The <u>Monell</u>  issue not having not been addressed by the trial court,  Quigg clearly was not obligated to speculate  in advance at her peril (in her principal brief) as to  the arguments that TCSD  might raise in this appeal.

Second, if credited by the trier of fact, Quigg's evidence would suffice to impose §1983 liability on TCSD: where a majority of the multi-member body acts for unlawful reasons, §1983 liability may be properly imposed.  <u>Owen v. City of Independence</u>, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 1398 (1980)(City properly held liable based on actions of majority of City Council members); <u>Hearn v. City of Gainesville</u>, 688 F.3d 1328, 1334  (11th Cir.  1983) ("city acts through its employees and its legislative body"); <u>Brown v. City of Fort Lauderdale</u>, 923 F.3d 1474 (11th Cir.  1991) ("Thus, 'recovery from a municipality is limited to act that are, properly speaking, acts 'of the municipality'–that is, acts which the municipality had officially sanctioned or ordered."); <u>Craig v. Floyd County</u>, 643 F.3d 1306, 1310 (11th Cir. 2011)(decisions of

25

legislative bodies sufficient to impose §1983 liability). Here, Quigg has alleged----and offered supporting evidence—that all five of the individual Defendants voted to oust Quigg because of her gender–female—and/or because her refusal, as a female, to hire a "strong male hatchet man"—a requirement which was not applied to Quigg's male replacement, Kornegay, who was permitted to hire a female assistant superintendent. This more than suffices to impose liability on TCSD under §1983.

## CONCLUSION

Based on the foregoing, Quigg respectfully requests that this Court reverse the grant of summary judgment below, and remand the case for a trial on the merits.

Respectfully submitted this 13th day of June,  2015.


*/s/ Harlan S. Miller*
Harlan S. Miller
Georgia Bar No. 506709


Miller Legal, P.C.
3646 Vineville Avenue
Macon, Ga., 31204
(404) 931-6490
(866) 704-3161 (fax)
hmiller@millerlegalpc.com

26

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,212   words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This 13th day of June, 2015.

<div align="center" style="text-align:center"></div>

> */s/ Harlan S. Miller*
> Harlan S. Miller
> Georgia Bar No. 506709
> Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

APPELLANT'S REPLY BRIEF by electronic mail  to the Counsel of Record for the

Appellees:


    Edward Preston
    Randall Farmer

This 13th day of June, 2015.


                    */s/ Harlan S. Miller*
                    Harlan S. Miller
                    Georgia Bar No. 506709

28